IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2022

## JOE L. FORD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County
No. 17-03523, C1705772   Glenn Ivy Wright, Judge**

———————————————————

### No. W2022-00247-CCA-R3-PC

———————————————————

The petitioner, Joe L. Ford, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TOM GREENHOLTZ, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Joe L. Ford.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Will Cranford, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### *Facts and Procedural History*

### I.      Guilty Plea Hearing

On August 5, 2019, the petitioner entered a best interest plea to second-degree murder, attempted first-degree murder, and convicted felon in possession of a handgun, for which he received an effective sentence of twenty-five years at 100% to be served consecutive to a prior federal sentence. The facts underlying the plea, as explained by the State, were as follows:

[O]n, or about, July 15, 2017[,] at approximately 8:35 p.m. Memphis Police responded to a shooting call at 3520 Greybark[.] [O]fficers made the scene and they found the victim, Edward Bullock, lying on the ground, bleeding from his back. The victim was transported to the Regional One Medical Center where he was pronounced dead, some two weeks later on July 28, 2017, as a result of the gunshot wound.

The Shelby County Medical Examiner had placed Mr. Bullock's death as a homicide, based on the gunshot wound.

[The petitioner] was developed as a suspect after witnesses gave statements and identified [the petitioner] in a photo lineup. There was also a video showing the incident that occurred.

The witnesses told investigators of a physical altercation that had gone on between [the petitioner] and the victim and that [the petitioner] left and came back armed with a handgun and shot the victim twice in the back, placing also Nicholas Hose in the vicinity of being shot.

At the time that [the petitioner] was in possession of a handgun, he had been convicted of two counts of aggravated assault, burglary of a motor vehicle and [the] burglary was in 2001 and 1999.

During the plea colloquy, the petitioner informed the trial court that he understood his rights. He further understood that, by pleading guilty to the charges, the petitioner would be waiving his right to a trial by jury, to confront witnesses against him, and to appeal. The petitioner affirmed he was not being forced to plead guilty and was pleading guilty freely and voluntarily. The trial court accepted the plea agreement and found the petitioner guilty of second-degree murder, attempted first-degree murder, and convicted felon in possession of a handgun.

## II.    Post-Conviction Hearing

The petitioner filed a pro se petition for post-conviction relief, arguing trial counsel was ineffective for failing to visit the petitioner in jail and failing to properly investigate his case. Following the appointment of counsel, the petitioner filed an amended petition in which he argued his guilty pleas were involuntarily obtained with "illegal evidence." An evidentiary hearing was held on October 12, 2021, during which the petitioner and trial counsel testified.

- 2 -

The petitioner testified that, after trial counsel was appointed to represent him, they went over his case together, but trial counsel "never got back in contact with [him]." Although the petitioner sent trial counsel multiple letters, trial counsel did not send a reply or visit him at the jail. However, trial counsel did provide the petitioner with a copy of his discovery during one of his court dates. On cross-examination, the petitioner agreed that his case was reset approximately twenty to thirty times between his arraignment and guilty plea and that he spoke to trial counsel or someone from his office at each court date.

The petitioner acknowledged that trial counsel had an investigator appointed to the case who visited him twice at the jail. However, when the petitioner gave the investigator a list of names to contact, the investigator stated that he was unable to speak with any of them. Later, when the petitioner talked to some of the people from the list, they told the petitioner that the investigator never tried to contact them. Specifically, the petitioner believed the investigator should have contacted the petitioner's girlfriend, his nephew, and a man who lived near the crime scene. Additionally, trial counsel did not investigate the source of multiple bullets found at the crime scene. On cross-examination, the petitioner agreed that a witness told police that multiple firearms had been shot on the 4th of July, which was several days before the shooting.

Regarding his guilty plea, the petitioner testified that he believed a best interest plea preserved his right to appeal his convictions. Although he remembered the trial court discussing the waiver of certain rights, he did not believe that included his right to appeal. On cross-examination, the petitioner agreed the trial court had told him that the guilty plea was a final disposition of his case.

Trial counsel testified he was appointed to represent the petitioner in October or November 2017. According to trial counsel, he met with the petitioner between five and seven times at the jail as well as at each court date for a total of twenty times. Trial counsel filed multiple motions, including a motion to suppress the photographic lineup. When trial counsel was initially appointed to the petitioner's case, he "thought it was an excellent case until [a] video appeared" which showed the petitioner running toward the victim with a gun just before the shooting. After viewing the video, trial counsel's defense strategy was to argue that it was a crime of passion. On cross-examination, trial counsel acknowledged that the records from the Shelby County Jail indicated that he visited the petitioner one time during his representation.

Trial counsel also stated that he gave the court appointed investigator numerous names to contact. However, many of the potential witnesses refused to speak with the investigator. In particular, Mario Colbert, the petitioner's nephew, was incarcerated at the time, and his attorney would not allow him to be interviewed. Although the investigator was unable to get any of the eyewitnesses in the case to speak with him, trial counsel was

able to get around this by having them testify at the motion to suppress hearing regarding the photographic lineup. Trial counsel could not recall being asked to look into the multiple shell casings that were found at the crime scene. However, he did not believe that would have helped the defense because they could have come from earlier shootings.

Regarding the petitioner's guilty plea, trial counsel testified that he informed the petitioner of the potential outcomes at trial if he were to be found guilty and that he was still receiving convictions despite taking a best interest plea. Trial counsel told the petitioner the guilty plea would "end the proceedings, that there would be no more appeals following the plea." However, trial counsel discussed the possibility of filing a post-conviction petition which has its own appeals process. Trial counsel denied coercing the petitioner into pleading guilty and stated that he was prepared to go forward with the trial that day if the petitioner had rejected the offer.

After its review of the evidence presented, the post-conviction court denied relief, and this timely appeal followed.

### *Analysis*

On appeal, the petitioner argues trial counsel was ineffective for failing to adequately visit the petitioner in jail and investigate the case. He also argues that his plea was not voluntary and that he is entitled to a second post-conviction hearing because post-conviction counsel was deficient. The State contends that the post-conviction properly denied the petition and that the petitioner is not entitled to a second post-conviction hearing. Following our review, we agree with the State.

The petitioner bears the burden of proving his post-conviction factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). The findings of fact established at a post-conviction evidentiary hearing are conclusive on appeal unless the evidence preponderates against them. *Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). This Court will not reweigh or reevaluate evidence of purely factual issues. *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, appellate review of a trial court's application of the law to the facts is *de novo,* with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel presents mixed questions of fact and law. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Thus, this Court reviews the petitioner's post-conviction allegations *de novo,* affording a presumption of correctness only to the post-conviction court's findings of fact. *Id*.; *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that counsel's deficient performance

prejudiced the outcome of the proceedings. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the standard for determining ineffective assistance of counsel applied in federal cases is also applied in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In order for a post-conviction petitioner to succeed, both prongs of the *Strickland* test must be satisfied. *Id*. Thus, courts are not required to even "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id*.; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (stating that "a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

A petitioner proves a deficiency by showing "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the *Strickland* test is satisfied when the petitioner shows there is a reasonable probability, or "a probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

A guilty plea must be knowingly, voluntarily, and intelligently entered in order to be valid. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). The court must determine whether the guilty plea evidences a voluntary and informed decision to pursue a guilty plea in light of the alternative options available to the defendant. *Id.* In the context of a post-conviction challenge to a guilty plea, both prongs of the *Strickland* test must be met. *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013). Thus, to successfully challenge his guilty plea, the petitioner must show counsel's performance was deficient, and he "must establish a reasonable probability that, but for the errors of his counsel, he would not have

entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *Garcia*, 425 S.W.3d at 257 (Tenn. 2013).

## I.      Waiver

Initially, although not addressed by the State, we must discuss whether the petitioner waived the issues in his original and amended petitions.  When the petitioner filed his amended petition for post-conviction relief, he did not incorporate the issues raised in his pro se petition, and therefore, those issues were deemed abandoned.  *See Dennis Evans v. State*, No. W2017-01619-CCA-R3-PC, 2018 WL 4961490, at *10 (Tenn. Crim. App. Oct. 15, 2018) (holding the petitioner abandoned his claim by failing to specifically incorporate his pro se petition for post-conviction relief into his two amended petitions), *no perm. app. filed*.  Furthermore, at the evidentiary hearing, when the post-conviction court asked post-conviction counsel if there was an amended petition, she answered, "No, Your Honor." The post-conviction court again asked, "There is not an amended petition?"  Post-conviction counsel repeated, "No."  At that point the post-conviction court noted that it had a copy of the original petition and started the hearing.  Post-conviction counsel's adamant denial that an amended petition had not been filed is curious when it is clear from the record that one had, in fact, been filed on April 22, 2021.  Because post-conviction counsel denied the amended petition at the start of the evidentiary hearing, we hold that the petitioner abandoned the amended petition.  However, during the evidentiary hearing, the State allowed post-conviction counsel to question trial counsel and the petitioner, without objection, about each of the issues in his pro se and amended petitions, and the post-conviction court ruled on the issues in its order denying the petitions.  *See Marlon Yarbro v. State*, No. W2017-00125-CCA-R3-PC, 2018 WL 4441364, at *7 (Tenn. Crim. App. Sept. 17, 2018) (concluding that the State waived its claim of procedural default when it failed to object to an issue raised by the petitioner at the post-conviction hearing that was not explicitly included in his petition for post-conviction relief), *no perm. app. filed*. Accordingly, the petitioner's waiver notwithstanding, we will consider his arguments on their merits.

## II.      Failure to Visit the Petitioner

The petitioner argues trial counsel was ineffective for failing to adequately visit the petitioner in jail.  The State contends trial counsel adequately met with the petitioner prior to his guilty plea.

At the evidentiary hearing, the petitioner testified that he and trial counsel discussed his case when trial counsel was first appointed, but trial counsel "never got back in contact with [him]."  According to the petitioner, while trial counsel provided the petitioner with discovery, he did not visit the petitioner in the jail or answer the petitioner's letters.

However, on cross-examination, the petitioner acknowledged that he and trial counsel spoke at his numerous court dates. Trial counsel testified that he visited the petitioner in jail "between five and seven times" as well as at every court date, for a total of twenty visits. However, on cross-examination, trial counsel acknowledged that the Shelby County Jail records showed that he visited the petitioner one time during his representation.

Implicit in the post-conviction court's order denying relief is an accreditation of trial counsel's testimony, and nothing in the record preponderates against the post-conviction court's factual findings. *See Tidwell*, 922 S.W.2d at 500. Despite the record showing trial counsel visited the petitioner only one time in jail, the petitioner, himself, testified that he met with trial counsel approximately twenty times in court. The petitioner has failed to establish his claim of deficient performance with regard to communication. Moreover, the petitioner has failed to show he was prejudiced by trial counsel's actions because he has not shown that, but for counsel's lack of communication, he would not have pleaded guilty. Trial counsel negotiated a plea deal, communicated the offer to the petitioner, and the petitioner accepted the offer. Trial counsel's alleged lack of communication did not affect the guilty plea. *See Phillip Alexander McWilliams v. State*, No. E201700275CCAR3PC, 2017 WL 5046354, at *4 (Tenn. Crim. App. Nov. 2, 2017) (rejecting claim of ineffective assistance of counsel with focus not on the number of meetings, but the developments in the case: "While this [the number of meetings] is not ideal communication, Petitioner failed to show any sort of development in his case that trial counsel failed to communicate to him. Also, Petitioner has not shown that his objectives were not accomplished by trial counsel's representation or that Petitioner was unable to make an informed decision."), *no perm. app. filed*. Accordingly, the petitioner is not entitled to relief on this claim.

### III. Failure to Investigate

The petitioner argues trial counsel was ineffective for failing to properly investigate his case. Specifically, while the petitioner acknowledges trial counsel hired an investigator, he contends that the investigator failed to contact the witnesses the petitioner provided and that trial counsel failed to ensure the investigator was working on the case. The State contends the post-conviction court properly found trial counsel was not ineffective for failing to investigate.

At the evidentiary hearing, the petitioner testified that trial counsel had an investigator appointed to work on the case. The investigator visited the petitioner twice at the jail, and the petitioner gave him a list of names to contact, specifically his girlfriend, his nephew, and a man who lived near the crime scene. Although the investigator stated he was unable to get in touch with them, the petitioner claimed that the witnesses later told him that the investigator never tried to contact them. Trial counsel testified that his investigator attempted to contact the witnesses in the case; however, they refused to speak

- 7 -

with him. Trial counsel attempted to get around this by filing a motion to suppress the photographic lineup. This allowed trial counsel to hear the testimony of several eyewitnesses prior to trial.

As discussed above, implicit in the post-conviction court's order denying relief is an accreditation of trial counsel's testimony, and nothing in the record preponderates against the post-conviction court's factual findings. *See Tidwell*, 922 S.W.2d at 500. Furthermore, although the petitioner argues trial counsel should have located and interviewed several witnesses, the petitioner failed to present them at the evidentiary hearing and, therefore, cannot establish prejudice. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). The petitioner is not entitled to relief on this issue.

## IV. Guilty Plea

The petitioner argues his guilty plea was involuntarily entered. Specifically, the petitioner argues that, based on his conversations with trial counsel, he believed that he would be preserving his right to appeal by entering a best interest plea. *See North Carolina v. Alford,* 400 U.S. 25 (1970). The State contends the post-conviction court properly found that the petitioner failed to prove his guilty plea was involuntary.

At the evidentiary hearing, the petitioner testified that he believed a best interest plea preserved his right to appeal his convictions. Trial counsel testified that he informed the petitioner that the guilty plea would "end the proceedings, that there would be no more appeals following the plea." However, he did describe the post-conviction process and explained that it had its own appeals process. In denying relief, the post-conviction court found the following:

> [the p]etitioner claims that the guilty plea was involuntary and obtained in violation of his rights granted by the Constitution of the State of Tennessee and the United States Constitution. Trial counsel testified, however, that on the day of trial he discussed with [the p]etitioner the potential outcomes that could come out of trial if he is found guilty. . . . Trial counsel further testified that he was prepared to go to trial had petitioner decided to go to trial. . . .

> In the transcript of the guilty plea proceeding, [the p]etitioner testified he knew what he was pleading to, what the charges against him were, and the sentence that he was receiving. . . . [The p]etitioner further testified that he understood his rights at the time, and pled guilty because he thought it was in his best interest. . . . [The p]etitioner also testified that it was his choice to plead guilty, and nobody forced him to plead guilty. . . .

[The p]etitioner has failed to prove that the guilty plea was involuntary or that trial counsel's performance was deficient.

Our review of the guilty plea transcript mirrors the findings of the post-conviction court. The record shows the trial court thoroughly explained the nature and consequences of the petitioner's guilty plea, including the charges against the petitioner, the penalties he faced as a result of the plea, and the potential penalties he faced if he proceeded to trial. The record demonstrates that, at the time the petitioner entered his guilty plea, he understood he would serve an effective twenty-five-year sentence for second-degree murder, attempted first-degree murder, and convicted felon in possession of a handgun, which would run consecutive to a prior federal sentence. Throughout the hearing, the petitioner affirmed that he understood his rights and wished to proceed with the guilty plea. The petitioner has failed to offer any evidence that preponderates against the post-conviction court's characterization of the knowing and voluntary nature of the petitioner's guilty plea. *See Tidwell*, 922 S.W.2d at 500. Accordingly, the record supports the post-conviction court's finding that the petitioner was not coerced into entering the plea. The petitioner is not entitled to relief on this issue.

## V. Ineffective Assistance of Post-Conviction Counsel

Finally, the petitioner contends that he is entitled to a second post-conviction hearing based on post-conviction counsel's deficient performance. He argues post-conviction counsel was ineffective for failing to sign the required certification indicating she thoroughly investigated the petitioner's claims, to raise more than one issue in the amended petition, to make a closing argument at the post-conviction hearing, and to present witnesses at the post-conviction hearing. The State submits the petitioner was afforded the opportunity to have his issues heard at the evidentiary hearing and is, therefore, not entitled to an additional post-conviction hearing.

Initially, we note "there is no constitutional entitlement to the effective assistance of counsel in a post-conviction proceeding." *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). Nevertheless, Tennessee Supreme Court Rule 28 section 6(C) provides as follows:

(2) Appointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which the petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

- 9 -

(3) Appointed or retained counsel shall file the certificate of counsel set forth in the appendix within thirty (30) days of either being retained or appointed to represent petitioner, except for good cause shown.

However, our supreme court has stated that while these rules "set forth a minimum standard of service to which post-conviction counsel is held," they "do not provide any basis for relief from a conviction or sentence." *Id.* at 681. "All that due process requires in the post-conviction setting is that the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Specifically, a full and fair hearing only requires "the opportunity to present proof and argument on the petition for post-conviction relief." *Id.* at 714.

Our review of the record indicates that post-conviction counsel did not file a certification in compliance with Tennessee Supreme Court Rule 28(6)(C)(3). However, this Court has repeatedly held that a Rule 28 violation by post-conviction counsel does not warrant a second post-conviction hearing. *See Kenneth Brown v. State*, No. W2017-01755-CCA-R3-PC, 2017 WL 931735, at *12-13 (Tenn. Crim. App. Feb. 22, 2019), *no perm. app. filed*. Despite the extensive authority holding that violations of Rule 28 do not warrant a second post-conviction hearing, the petitioner claims that he is entitled to relief pursuant to footnote 10 in *Thaddeus Johnson*, which states:

We likewise acknowledge that there could conceivably be a situation where counsel's egregious violation(s) of Rule 28 might impermissibly violate the limited due process requirements for post-conviction proceedings so as to warrant a second post-conviction hearing; however, we reaffirm that there is no legal authority for the proposition that a Rule 28 violation, in itself, justifies another bite at the post-conviction apple.

*Thaddeus Johnson v. State*, No. W2014-00053-CCA-R3-PC, 2014 WL 7401989, at *9 n.10 (Tenn. Crim. App. Dec. 29, 2014), *perm. app. denied* (Tenn. May 18, 2015).

We conclude that no "egregious violation(s) of Rule 28" occurred in this case. The record shows that post-conviction counsel thoroughly investigated the petitioner's claims, filed an amended petition, and presented evidence on the claims at the evidentiary hearing. Although, as discussed above, post-conviction counsel failed to incorporate the petitioner's pro se petition into the amended petition or acknowledge the amended petition at the evidentiary hearing, all of the petitioner's claims were heard at the evidentiary hearing, and the post-conviction court ruled on each claim. Because the petitioner received a full and fair hearing on his post-conviction petition with the assistance of post-conviction counsel, he is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE